[No. 5295. Decided April 20, 1905.]

SIDNEY NORMAN, *Respondent*, v. A. D. HOPPER *et al.,* *Appellants.*[1]

BROKERS—ACTION FOR COMMISSIONS—OPTIONAL CONTRACT—OFFER TO PERFORM. A broker who finds a purchaser ready, able, and willing to buy the property on the terms agreed upon, is entitled to his commissions, notwithstanding that an agreement was entered into, optional in character upon the part of the purchaser, where the purchaser offered to perform such optional agreement.

SAME—DEFENSES—RATIFICATION OF SALE BY STOCKHOLDERS—. CONTRACT OF BROKER. Where the defendants, two of the stockholders of a corporation, employed the plaintiff, a broker, to sell the assets of the corporation, he is entitled to recover his commissions on securing a purchaser ready, able, and willing to buy, notwithstanding that it was provided in the contract of sale that the same was not to be binding until ratified by all the stockholders of the company, where the broker did not undertake to procure such ratification.

SAME—CASH SALE—TERMS. A broker who was to make a cash sale is entitled to commissions where different terms proposed were assented to by the vendors.

[1]Reported in 80 Pac. 551.

APPEAL—REVIEW—HARMLESS ERROR. Error cannot be assigned on limiting the cross-examination upon a question which was eliminated from the case by the verdict of the jury.

SAME. Error cannot be predicated upon sustaining objections to questions where the materiality of the answers is not apparent, and the court was not informed as to what the appellant expected to prove.

SAME—BROKER'S COMMISSIONS—EVIDENCE. In an action against vendors for a broker's commissions where the vendors and vendees had each agreed to pay one-half, and the sale was not consummated through the inability of the vendors to convey, it is immaterial and harmless to permit the vendees to testify that they had adjusted their claims with the vendors.

TRIAL—VERDICT—SPECIAL FINDINGS—QUESTIONS NOT ANSWERED —HARMLESS ERROR. No prejudice results from a jury's answering "doubtful" to two special findings, where they were equivalent to a negative finding in favor of the appellants, and were so treated by the jury in the general verdict.

TRIAL—VERDICT—POLLING JURY. After polling the jury as to a general verdict, it is proper to poll them as to special findings *en masse.*

Appeal from a judgment of the superior court for Spokane county, Belt, J., entered October 16, 1903, upon the verdict of a jury rendered in favor of the plaintiff, in an action to recover a broker's commissions. Affirmed.

*W. J. Thayer,* for appellants.

*Graves & Graves,* for respondent.

PER CURIAM.—While the complaint in this case contains three causes of action, they all relate to the same general transaction. The substance of that transaction is that, sometime in the month of May or June, 1902, the defendants, Hopper and Aldrich, the former the president and treasurer of the Spokane Falls Gas Light Company, and the latter the secretary of the same company, agreed with the plaintiff that, if he would obtain a purchaser for all the property of the gas company for the sum of $375,-

000, the defendants would pay him a commission in the sum of $5,000 for his services; that thereafter the plaintiff secured purchasers for said property, who were ready, able, and willing to purchase the same for the sum of $365,000, and to pay in addition thereto one-half of plaintiff's said commission, and the defendants thereupon agreed to sell said property at said price, and to pay the other half of plaintiff's said commission; that the defendants failed and refused to complete said sale or to carry out said agreement, to the plaintiff's damage in the sum of $5,000. The defendants answered separately, the answers being general denials, except as to the corporate existence of the gas company. A judgment was entered in the court below, on a verdict in favor of the plaintiff, in the sum of $2,500, and from such judgment the defendants appeal.

A multitude of errors are assigned and discussed in the appellants' brief, under different headings and sub-headings. A separate discussion of each assignment would extend this opinion to an inordinate length, without any corresponding benefit. The difference between counsel seems to arise out of a misunderstanding as to the terms of the agreement which the parties entered into, as the case itself involved the application of no doubtful principles of law. What was the undertaking of the respondent, and what constituted a performance of his contract? His contention is that he undertook to find a purchaser ready, able, and willing to purchase the property of the gas company for the sum of $365,000, and nothing more, and that he fully performed his agreement in that regard. On the other hand, the appellants contend that his undertaking was not only that he should find a purchaser ready, able, and willing to take the property upon the terms agreed upon, but that all the stockholders of the gas company

should ratify the sale.  If the contention of the respondent is the correct one, there would seem little, if any, doubt that he was entitled to a verdict.  If the contention of the appellants is correct, it is equally clear that the judgment should have been in their favor.  We think the testimony was ample to sustain the claim of the respondent, and that, in the absence of some other error in the record, the judgment should be affirmed.

On the 10th day of July, 1902, through the agency of the respondent, the appellant Hopper, as party of the first part, and Robert E. Strahorn and Jay P. Graves, as parties of the second part, entered into an agreement relating to the sale of the property of the gas company.  This agreement fixed the terms and conditions of the sale, together with the purchase price to be paid, and the time and manner of payment, but the agreement was optional in a measure.  It contained a provision that it should not be binding until ratified by all the stockholders of the gas company, and that the second parties assumed no personal liability in regard thereto, and should not be deemed to render themselves individually liable for a failure to carry it out.  The appellants' first contention is that the respondent only found purchasers who entered into an optional contract, and therefore he cannot recover, under numerous decisions of this and other courts.  This contention is based upon the optional agreement, which was received in evidence, and upon the answer of the respondent to a single interrogatory propounded to him, and not upon the entire record.  Taking the testimony as a whole, it clearly shows that the respondent not only found purchasers who entered into an optional contract, but also that the purchasers found were ready, able, and willing to perform their part of the optional agreement.  This contention will, therefore, be passed without further no-

tice, as it finds no support in the record taken as an entirety.

In this connection the appellants requested the following instruction:

"If you believe from the evidence that there was no agreement, or offer to purchase the property of the Spokane Falls Gas Light Company, by any purchasers secured by the plaintiff other than that contained in the writing introduced in evidence dated July 10, 1902, and signed by A. D. Hopper and Robert E. Strahorn and Jay P. Graves, then your verdict will be for the defendants."

Inasmuch as the uncontradicted testimony showed that Strahorn and Graves were ready, able, and willing to take up the optional contract and offered to do so, there was no error in the refusal to give this instruction.

Appellants further contend that the respondent knew that the appellants did not own or control all the stock of the gas company, that the assent or ratification of all stockholders was necessary to a consummation of the sale; and that, therefore, the respondent cannot recover without showing such assent or ratification. The difficulty which confronts the appellants here is that the jury found that the respondent did not undertake to procure the assent or ratification of the stockholders, and was not concerned with that question. When he found purchasers, able, ready and willing to take the property on the terms agreed upon, he fulfilled his agreement, and whether the sale was consummated or the ratification of stockholders obtained was a matter of no moment to him. In *Seattle Land Co. v. Day,* 2 Wash. 451, 27 Pac. 74, cited by appellants, the court held that it was a joint speculation between the owner and the broker, and that, by the terms of their agreement, the broker was to receive no compensation unless a sale was actually made. It is also suggested that the

agreement to pay a commission on the $365,000 sale is not founded upon a sufficient consideration. Counsel suggests no reason why it was not, and we perceive none. He further suggests that the agreement was to find a cash purchaser, but if the appellants assented to the terms proposed, it was the equivalent of cash.

It is next contended that the court improperly limited the cross-examination of the respondent in relation to the agreement on the part of the purchasers to pay a part of the commission. Inasmuch as this question was eliminated from the case by the verdict of the jury, no error can be assigned on that branch of the case. Counsel for appellants also propounded certain questions to the respondent, relating to the negotiations leading up to the signing of the optional agreement of July 10, 1902. To these questions objections were sustained by the court. The record does not show that the answers given would be material, nor are we informed what counsel expected to prove. The appellants contend that the materiality of the answers is apparent on the face of the record, but this contention is manifestly ill-founded. The answers might have been that no negotiations whatever preceded the written contract, or such negotiations, if proved, might have been adverse to the appellants. Error will not be presumed, and unless any negotiations proven, or the absence of all negotiations, would be material to the appellants' case, it was clearly incumbent on them to inform the court what they expected to prove, and to make such offer a part of the record. *Ladd v. Missouri Coal & Min. Co.,* 66 Fed. 880; *Marshall v. Hancock,* 80 Cal. 82, 22 Pac. 61; *Lauter v. Duckworth,* 19 Ind. App. 535, 48 N. E. 864; *South Omaha v. Burke* (Neb.), 91 N. W. 562; *Carpenter v. Willey,* 65 Vt. 168, 26 Atl. 488; *Dreher v. Fitchburg,* 22 Wis. 675, 99 Am. Dec. 91.

This is not a case where the materiality of the evidence is apparent, nor does it bear any analogy to a case where an objection is sustained to any evidence in support of an affirmative pleading. In the latter case the facts which the party expects to prove are contained in the leading itself, and are therefore a part of the record.

The claim that the court commented on the facts in its instructions is based upon disconnected portions of the charge. When the instructions of the court are taken as a whole, there is no merit whatever in this contention. Exceptions are also taken to some parts of the instructions in relation to the commission to be paid by the purchasers, but, as already stated, that question has been eliminated from the case by the verdict.

The deposition of the witness Jay P. Graves contained the following answer to a question propounded to him: "I, by a conversation had with Hopper, adjusted our claims with him." The question and answer were read without objection. At the close of the plaintiff's case, a motion to strike the answer, and a motion to request the jury to disregard the testimony, were denied. Passing over the suggestion of counsel for respondent that the objection was waived, and came too late after the close of the respondent's case, we think the question and answer were so utterly immaterial on the trial of the issues in this case that no possible prejudice could result therefrom.

Eight special findings were submitted to the jury in addition to the general verdict. To six of these the jury answered, "Yes;" to the other two, "Doubtful." It appears from the general verdict that the two findings designated as "doubtful" were equivalent to negative findings in favor of the appellants, and were so treated by the jury in their general verdict. The appellants could not possibly be injured, therefore, by the want of more specific

answers.   After the return of the verdict the jury were polled as to their general verdict, at the request of the appellants; but were polled as to the special findings *en masse,* over the objection and protest of appellants.   We think the proceedings were regular and sufficient.   The time of the courts should not be taken up with mere legal quibbles, where no substantial rights are involved.

Finding no error in the record, the judgment is affirmed.