[No. 13571. Department Two. February 16, 1917.]

G. W. MOGELBERG, *Respondent*, v. C. E. CALHOUN *et al.*, *Appellants*, CHARLES GASSAR, *Defendant and Respondent*.[1]

APPEAL—BOND—NECESSITY — NEW BOND — STATUTES. An appeal bond given by certain defendants in favor of the plaintiffs, is insufficient to support their appeal from a separate judgment in favor of codefendants upon a cross-complaint, tried out without objection in the main case, in view of Rem. Code, § 1721, requiring an appeal bond "to the adverse party;" hence Rem. Code, § 1730-9, providing for the curing of defects in an appeal bond by the giving of a new bond is ineffectual to save the appeal as to the codefendant, since the latter act has no application where no appeal bond whatever has been given (FULLERTON, J., dissents).

SAME—APPEAL BOND—ADVERSE PARTY—SEPARATE JUDGMENTS. A codefendant who was exonerated from plaintiffs' cause of action, and who obtained a separate verdict and judgment against the other defendants upon a cross-complaint constituting a separate cause of action, is not an "adverse party" to an appeal by his codefendants from the judgment against them in favor of the plaintiffs, where the verdicts and judgments entered were separate and distinct, although appearing of record under one journal entry.

SAME—NOTICE—ABANDONMENT—SECOND NOTICE. A second notice of appeal which was never perfected by the giving of a bond and which recited that it was without waiving the former notice, does not constitute an abandonment of the original appeal.

SAME—RECORD—STATEMENT OF FACTS. It is not necessary to serve a statement of facts on a coparty who was not a necessary party to the appeal.

TRIAL—LIMITING NUMBER OF WITNESSES—DISCRETION. In an action for personal injuries, it is an abuse of discretion to limit the number of eyewitnesses to the accident to six, after the defendant had examined five witnesses, where they had viewed the accident from different angles and different distances and did not agree in all respects and their testimony was not confined to a single fact, and the defendant had other eyewitnesses to the accident present in court and ready to testify.

SAME—OFFER OF PROOF—SUFFICIENCY. An offer of proof need not be specific where it was assumed that it would be competent, relevant and material and it was erroneously excluded on other grounds.

[1]Reported in 163 Pac. 29.

HUSBAND AND WIFE—COMMUNITY DEBT. In an action against husband and wife for the negligence of the husband in driving an automobile for hire for the benefit of the community, a judgment against husband and wife "and each of them" is erroneous as being against her separate estate and should be confined to her community interest.

Appeals from judgments of the superior court for King county, Frater, J., entered January 18, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a passenger in an automobile, and upon a verdict in favor of defendant Gassar upon a cross-complaint, after a trial on the merits. Appeal dismissed as to defendant Gassar; reversed as to plaintiff.

*Geo. McKay* and *Henry S. Noon,* for appellants.

*Beechler & Batchelor (Arthur C. Bannon,* of counsel), for respondent Mogelberg.

*Byers & Byers,* for respondent Gassar.

PARKER, J. — The plaintiff, Mogelberg, commenced this action in the superior court for King county, seeking recovery of damages for personal injuries which he alleged resulted to him from the negligence of the defendants, Calhoun and Gassar, in the driving of their respective automobiles and causing them to come into collision at the intersection of Twentieth avenue and Union street, in Seattle, while he was a passenger for hire upon defendant Calhoun's automobile. Mrs. Calhoun was made a defendant evidently because of her alleged community interest in the operation of the automobile which was being driven by her husband as a carrier of passengers for hire. The Pacific Coast Casualty Company was made a defendant because it had executed a bond as security, with the defendant Calhoun as principal, in compliance with chapter 57, Laws of 1915, p. 227 (Rem. Code, § 5562-37 *et seq.*), relating to motor vehicles as passenger carriers in cities of the first class. The trial resulted

in verdict and judgment in favor of plaintiff Mogelberg, awarding him $2,500 against the defendants Calhoun and wife and the Casualty Company, from which they have appealed to this court. Defendant Gassar was exonerated from all liability to plaintiff Mogelberg, and there was also rendered in defendant Gassar's favor verdict and judgment upon a cross-complaint for damages filed against him in this action by his codefendant Calhoun. The issue so raised was tried together with the issue upon plaintiff Mogelberg's claim for damages against all the defendants, without objection. The defendants Calhoun and wife gave notice of appeal from this judgment in favor of Gassar.

Counsel for defendant Gassar moved to dismiss the appeal attempted to be taken from the judgment rendered in his favor upon the ground that it never was perfected by the filing of a bond as required by Rem. Code, § 1721. The only bond ever filed in the cause is one executed by defendants Calhoun and wife and the Casualty Company as principals with a surety, for the benefit of plaintiff Mogelberg, defendant Gassar not being mentioned or referred to therein in any manner as beneficiary. This bond plainly was intended only to perfect the appeal of defendants Calhoun and wife and the Casualty Company from the judgment rendered against them in favor of plaintiff Mogelberg. This judgment, as we shall presently see, is a separate judgment from that rendered in favor of defendant Gassar upon the cross-complaint of his codefendant Calhoun. But even if this were not so, the bond would seem ineffectual to perfect an appeal as against defendant Gassar, it not being given for his benefit by naming him as a beneficiary therein. Rem. Code, § 1721, provides that:

"An appeal in a civil action or proceeding shall become ineffectual for any purpose unless at or before the time when the notice of appeal is given or served, or within five days thereafter, an appeal bond to the adverse party conditioned for the payment of costs and damages as prescribed in section 1722, be filed with the clerk of the superior court, or

money in the sum of two hundred dollars be deposited with·
the clerk in lieu thereof.   .   .   ."

This provision has been given full force and effect by this
court.  *Bruhn v. Steffins,* 66 Wash. 144, 119 Pac. 29; *Heine
v. Hall,* 84 Wash. 260, 146 Pac. 577.  We conclude, there-
fore, that the appeal attempted to be taken from the judg-
ment rendered in favor of Gassar as against his codefendant
Calhoun should be dismissed.  We have not overlooked the act
of 1915 (Laws 1915, p. 303, § 9) relating to the curing of
. defects in appeal bonds reading as follows:

"When a notice of appeal to the supreme court shall have
been served and filed in due time and an appeal bond shall
have been given within the time required by law, no appeal
shall be dismissed because of any defect in the appeal bond,
nor because an appeal bond which is given both as a cost
bond and as a bond on supersedeas shall be insufficient by
reason of the amount, but the appellant shall in all cases
be allowed to give a new bond within such time and upon such
terms as the court may order."  Rem. Code, § 1730-9.

It seems quite plain to us that this provision has no ref-
erence to cases where no bond whatever has been filed as in
this case.  In so far as the judgment rendered in defendant
Gassar's favor upon the cross-complaint of his codefendant
Calhoun is concerned, there never was any bond, defective or
otherwise, given to perfect that appeal and therefore none to
cure by the giving of a new bond.  The appeal from the
judgment rendered in defendant Gassar's favor upon the
cross-complaint of his codefendant Calhoun is dismissed.

Counsel for plaintiff, Mogelberg, move to dismiss the ap-
peal taken by defendants Calhoun and wife and the Casualty
Company from the judgment rendered in his favor against
them upon the ground that no appeal bond has been exe-
cuted and filed by them as required by Rem. Code, § 1721.
It is argued that defendant Gassar is an adverse party in
the cause, and that, therefore, the appeal bond above men-
tioned given by defendants Calhoun and wife and the Casualty

Company is insufficient to perfect their appeal because it fails to name defendant Gassar as well as plaintiff Mogelberg as a beneficiary. Is defendant Gassar an adverse party in the cause in so far as the rights of defendants Calhoun and wife and the Casualty Company are here concerned? The correct answer to this question is manifestly the key to the correct disposition of plaintiff Mogelberg's motion to dismiss the appeal of defendants Calhoun and wife and the Casualty Company.

In the commencement of this action by plaintiff Mogelberg, it was not contemplated by him that there would be any issue in the cause other than his claim for damages against defendants Calhoun and wife and Gassar and his claim against the Casualty Company upon its bond. It was defendant Calhoun who brought into the case his claim for damages against his codefendant Gassar growing out of the same accident upon which plaintiff Mogelberg rested his claim against all the defendants. These two main issues were, without objection, tried at the same time, before the same court and jury, notwithstanding their separateness. Not only were they two separate causes, in substance, but they were so determined and disposed of by both the jury and the trial court. At the conclusion of the trial, two verdicts were returned and separate judgments rendered thereon, as evidenced by the following journal entry then made:

"G. W. Mogelberg, Plaintiff, vs. Charles Gassar, et al, Defendants, No. 111564, Tuesday, January 18th, 1916, Hon. A. W. Frater, Judge.

"At 9:30 A. M. the jury returns into open court the following verdicts:

"We, the jury in the above entitled cause do find for the plaintiff and against C. E. Calhoun and Mary I. Calhoun, his wife, in the sum of $2,500.

"And against Pacific Coast Casualty Company, a corporation, in the sum of $2,500.

"Charles B. Brown, Foreman.

"We, the jury in the above entitled cause, do find for the defendant, Charles Gassar and against the defendant C. E. Calhoun upon his cross-complaint.

"Charles B. Brown, Foreman.

"The jury is polled, eleven jurors answering that the verdicts are their personal verdicts and all jurors answering that the verdict is the verdict of the jury.

"The verdicts are received and filed and the jurors excused.

"It is ordered that plaintiff have judgment against the defendants, C. E. Calhoun and Mary I. Calhoun, his wife, and Pacific Coast Casualty Company, a corporation, and each of them in the sum of $2,500 with costs.

"It is further ordered that defendant Charles Gassar have judgment against the defendant, C. E. Calhoun cross-complainant for his costs.

"It is further ordered that defendant Charles Gassar have judgment against plaintiff for his costs in that behalf expended."

It is true that these entries appear under the title of the case entered but once, but the verdicts and judgments are no less separate because of being so entered. This is not a case in equity wherein a number of equitable rights of numerous persons are being determined by a decree, but it is a case wherein nothing but the purest of *legal rights triable by jury* are being determined, to wit, the question of plaintiff Mogelberg's right to recover damages against all of the defendants and the question of defendant Calhoun's right to recover damages against his codefendant Gassar; manifestly two controversies as separate and distinct as if separate actions and tried separately.

Within the time prescribed by statute, counsel for defendants Calhoun and wife and the Casualty Company served upon counsel for plaintiff Mogelberg, and filed in the superior court, notice of appeal "from the final judgment rendered in this action and from each and every part of said judgment." This notice was addressed to plaintiff Mogelberg only, and was manifestly intended only as a notice of

appeal from the judgment rendered in Mogelberg's favor against defendants Calhoun and wife and the Casualty Company. On the same day, the appeal bond above mentioned was executed by Calhoun and wife and the Casualty Company with a surety, which bond was sufficient in substance and form to perfect that appeal. It manifestly was intended to perfect that appeal and no other. That notice of appeal was not addressed to Gassar nor was it served upon him, nor did that bond name or in any manner refer to Gassar as beneficiary therein. It seems to us that, in the light of the separateness of these controversies and the separate verdicts and judgments rendered determining them, it is manifest that the rights of Gassar will be wholly unaffected by either the affirmance or the reversal of the judgment rendered in favor of plaintiff Mogelberg and against defendants Calhoun and wife and the Casualty Company. Gassar, therefore, is not an adverse party in the case in so far as the rights of any of the parties here involved are concerned. We find Gassar here in substantially the same situation as the defendant Dimmock was in in the case of *Sipes v. Puget Sound Elec. R. Co.*, 50 Wash. 585, 97 Pac. 723. In that case, Dimmock and the railway company were sued for damages, the trial resulting in a verdict against the railway company and exonerating Dimmock. Dimmock, therefore, of course, had no occasion to and could not appeal. In holding that it was not necessary upon the appeal by the railway company to serve Dimmock with notice of the appeal, Judge Crow, speaking for the court, observed:

"Dimmock was a successful litigant. There was no order from which he could appeal, and we fail to understand how the neglect to serve him with appellant's notice deprived any party of benefits to be derived from the appeal, or prevented the respondent from perfecting an appeal in his own behalf against the defendant Dimmock. While it is true that § 6504 [Rem. Code, § 1720] directs that service be made upon all parties who have appeared, it is apparent that the sole purpose of such notice to appearing parties, other than the pre-

vailing one mentioned in § 6503 [Rem. Code, § 1719], was that in the event of their having an interest in the appeal, they might join therein, if they so desired. In other words, the object of the statute was to require all interested parties to jointly prosecute their appeals and cross-appeals instead of bringing them to this court by piecemeal. . . .

"The condition of the record before us shows that the failure of the appellant to serve its notice of appeal upon Dimmock does not go to the substance of the appeal, nor to the right of appeal. Dimmock was satisfied with the judgment in his favor. Not being an aggrieved party, he could not appeal. Failure to serve him deprived him of no rights, neither did it prevent the respondent Sipes from appealing as against Dimmock, either by original or cross-appeal. How, then, would the presence of Dimmock aid this court in disposing of the issues arising on this appeal between the respondent Sipes and the appellant, the Puget Sound Electric Railway Company, or how could his absence interfere with a complete administration of justice as between them? Evidently the failure to serve him does not, on the record now before us, create any jurisdictional defect in the appeal of the Puget Sound Electric Company for which it should be dismissed."

Judge Rudkin, in a special concurring opinion, in that case also observed:

"The legislature never contemplated the service of a notice of appeal on parties who could not appeal or join in an appeal, and whose rights could in no manner be affected by any action the appellate court might take. We have so held in effect where parties appeared to disclaim, or were dismissed by consent, or where their claims were satisfied. *Doyle v. McLeod*, 4 Wash. 732, 31 Pac. 96; *McEachern v. Brackett*, 8 Wash. 652, 36 Pac. 690, 40 Am. St. 922; *Watson v. Sawyer*, 12 Wash. 35, 40 Pac. 413, 41 Pac. 43; *First Nat. Bank of Seattle v. Gordon Hardware Co.*, 30 Wash. 127, 70 Pac. 251; *Smalley v. Laugenour*, 30 Wash. 307, 70 Pac. 786; *Sheehan v. Bailey Building Co.*, 42 Wash. 535, 85 Pac. 44."

It is true, that decision dealt with the question of the necessity of serving notice of appeal upon Dimmock, while this has to do with the question of the necessity of making

defendant Gassar a beneficiary in the appeal bond. Manifestly, if it was unnecessary to serve notice of appeal upon Dimmock in the *Sipes* case because he was not an adverse party, it was unnecessary for Calhoun and wife and the Casualty Company to name their codefendant Gassar a beneficiary in their appeal bond in this case, since Gassar was in this case no more an adverse party than Dimmock was in the *Sipes* case, so far as his appealing codefendants are concerned. This conclusion also finds support in *Seattle Trust Co. v. Pitner*, 17 Wash. 365, 49 Pac. 505, and *Woelflen v. Lewiston-Clarkston Co.*, 49 Wash. 405, 95 Pac. 493; *Soderberg v. McRae*, 67 Wash. 104, 120 Pac. 878; *Carstens & Earles v. Seattle*, 84 Wash. 88, 146 Pac. 381.

Sometime after the giving of the notice of appeal last above noticed, but within the time prescribed by law, counsel for defendants Calhoun and wife and the Casualty Company served another notice of appeal upon counsel for both plaintiff Mogelberg and defendant Gassar. No bond was ever given looking to the perfection of· this appeal, and it therefore, of course, became ineffectual. It is argued that this was in effect an abandonment of the first appeal which had been perfected by the giving of the appeal bond, counsel relying upon that line of decisions which permits an appellant to abandon his appeal and give a new notice of appeal at any time within the statutory prescribed time for the taking of an appeal. See *Carstens & Earles v. Seattle*, 84 Wash. 88, 93, 146 Pac. 381, and cases cited.

Looking to this notice of appeal, we find therein these words, "without waiving their notice of appeal heretofore given herein." We are of the opinion, in view of the perfection of their first appeal and this reservation of their rights thereunder, that this new notice should not be construed as an abandonment of the first appeal. Just what the purpose was in giving this second appeal notice is not very clear. Evidently, however, it was because of some misgiving on the part of counsel as to the sufficiency of the first

appeal, and possibly with a view of giving a bond naming Gassar as well as Mogelberg beneficiary therein. This, however, counsel evidently concluded was unnecessary and abandoned the idea of perfecting this second appeal by the giving of a bond. The motion to dismiss the appeal of defendants Calhoun and wife and the Casualty Company is denied.

Counsel for Mogelberg move to strike the statement of facts from the record because it was not served upon Gassar before being settled by the trial court. It seems to us that what we have said touching the question of the necessity of the bond given upon this appeal being for the benefit of defendant Gassar and the necessity of his being named therein as a beneficiary, disposes of this contention. Since it was not necessary to serve Gassar with the notice of appeal given by Calhoun and wife and the Casualty Company, or to name him as a beneficiary in the bond given in the perfection of that appeal, it was not necessary to serve him with a statement of facts or with notice of the filing thereof. The decision of this court in *Woelflen v. Lewiston-Clarkston Co.,* 49 Wash. 405, 95 Pac. 493, seems to so hold. We conclude that the motion to strike the statement of facts must be denied. It is so ordered.

It is contended in appellants' behalf that the trial court erred in its refusal to allow more than six witnesses who were eyewitnesses to the accident to testify in appellants' behalf. After Mr. Horner, then of counsel for appellants, had put upon the witness stand and examined five witnesses who had seen the accident and testified as to how it happened as they viewed it, the following occurred:

"Mr. Horner: I will call Mr. LeBeau.

"The Court: This will be the last witness on that line. I am going to call attention to that now because you have had at least six, and that is the limit of cumulative evidence. I cannot sit here and listen to an unlimited number of people testifying to the same facts. You have had at least six, I think, if not seven.

"Mr. Horner:   We have three more, two more besides him.

"The Court:   This will be the last witness.   You cannot put on any more that will testify to the same facts, simply witnesses to the accident."

Mr. LeBeau was then sworn and examined, giving his version, he being an eyewitness to the accident.   Thereafter, the following occurred:

"Mr. Horner:   We now offer the testimony of James Bayard, who is in the court room, of 1010 Howell street, Seattle, who was an eyewitness to the accident on September 14, 1915, at Twentieth avenue and East Union street, in Seattle.

"We also offer the testimony of Mrs. W. J. Simons, Riverside avenue, Seattle, Washington, who was an eyewitness to the accident at Twentieth avenue and East Union street on September 14, 1915, between Mr. Calhoun and Mr. Gassar.

"Mr. McKay:   Now, your Honor, before ruling on this, it is only fair to say this, that these men who are eyewitnesses see the accident from different angles and different positions and see different features of the accident.   It cannot be said that each witness is repeating the testimony of any other witness.   Now, your Honor has seen the witnesses brought on here and no two of them have seen it exactly alike.   They see it from different angles and they see it from different viewpoints and it is not fair to say they are testifying to the same state of facts, and that they are merely cumulative witnesses.   They are witnesses who have seen the matter from different points and from different angles.   Now, as I understand, these two witnesses were not in the jitney.   They were going down the hill and were not driving in the machine and they were in such a position that they would see the matter in a different angle, entirely different from what the other parties have seen it, and their testimony will not be identical with the other witnesses but seen from a different angle in a different position.

"The Court:   The court will adhere to the rule.   .   .   . At least seven different witnesses have testified to seven different angles and seven different points of view.   .   .   .   The court will not permit any time to be taken up with any more witnesses on the one point.   .   .   .

"The Court:   You may note an exception."

The several witnesses who had seen the accident and tes-
tified in appellants' behalf viewed it for the most part from
different angles and from different distances.   While they
did not disagree in their different versions of how it occurred
to any great extent, they did not agree in all respects.
Their testimony was not confined to a single fact, but each
stated a number of detailed facts bearing upon the main issue
in the case, to wit, Calhoun's and Gassar's negligence.   This
was not opinion or expert testimony upon some single ques-
tion, nor was it even testimony of eyewitnesses relating to
some single question, except as the testimony of the several
witnesses had a bearing upon the main question of the de-
fendants Calhoun and Gassar's negligence.   The decisions
seem not wholly in harmony upon the question of the extent
of a trial court's power to limit the number of witnesses a
party may examine and have testify in his behalf on some
single question; but no decision has come to our notice which
we regard as supporting the view that a trial court has the
power to limit the number of eyewitnesses which a party
may have testify in his behalf, as the trial court ruled in this
case.   This question similarly arising was learnedly reviewed
at length by the supreme court of Missouri in *St. Louis, M.
& S. E. R. Co. v. Aubuchon,* 199 Mo. 352, 97 S. W. 867,
116 Am. St. 499, 9 L. R. A. (N. S.) 426.   In that case, the
trial court limited the number of witnesses to four upon each
side upon the question of damages in an eminent domain case,
the limitation apparently being, as in this case, not as to
the number of witnesses who might express opinions as to the
amount of damages, but the number of witnesses who would
be permitted to testify touching the question of damages,
manifestly including those who might describe the situation
as well as those who might give opinion testimony.   In hold-
ing that the trial court in that case abused its power in so
limiting the number of witnesses, Judge Lamm, speaking for
the court, said:

"Plaintiff assigns error in the exclusion of testimony—the point arising *nisi*, in this way: Having introduced three witnesses on the question of damages, the trial court, during the examination of the third witness on behalf of plaintiff, announced a rule to the effect that each side would be allowed only four witnesses on that issue, and applying the rule to the then condition of plaintiff's proof, allowed only one other witness to plaintiff on that issue. Plaintiff tendered other witnesses on that issue, but they were excluded. . . .

"On collateral and incidental issues, as for example the general reputation of a witness, or an issue upon a motion for a change of venue, or for costs, etc., it is a wise and a settled rule to allow trial courts wide discretion; and error predicated upon the exercise of such discretion should be palpable and manifest to be held prejudicial.

"Nor will we lay down any hard-and-fast rule circumscribing the power of trial courts, in the economy of time and dispatch of business, to put some reasonable bounds on the introduction of witnesses on a main issue in a civil suit; especially so where the evidence on a single point is not controverted, or where it is distinctly cumulative in quantity and quality. But evidently the matter should be approached with caution and an arbitrary rule allowing four witnesses to a side in a damage suit upon the issue of damage or no damage cannot be defended. Much less can it be defended when the rule is made and applied (as here) after three witnesses have been placed upon the stand by one party. Picking and choosing become a vital matter under such rule, and even-handed justice requires that both parties have fair forewarning and the full privilege to pick and choose. This privilege was denied plaintiff and thereby defendant had a distinct advantage; because, after the rule, plaintiff had but one choice, while defendant had four.

"But, on principle, the rule was arbitrary and, we think, unreasonable. Defendant's damage might be composed of many elements, and one witness might be qualified on one element and another witness on another. . . .

"The jury are the sole and exclusive judges of the weight of the testimony; with that the trial court has nothing to do during the trial. If, then, the trial judge may, without any cause shown, project his will arbitrarily into the num-

ber of witnesses on the crucial point in the case, he may by that token entirely foreclose the weight of evidence, and thus indirectly do what he may not directly do, to-wit, interfere in a realm where the jury reign supreme; and while we would not want to say that a trial judge must supinely and indefinitely sit with folded arms to hear a cloud of witnesses spin out evidence upon the same point, yet there was no such threatened abuse in this case, and the precedent established by the learned judge, *nisi*, ought not be be sustained.

"There may be conflict in the authorities, but the weight of judicial opinion and the quality of reasoning advanced therefor lie with the view herein expressed: (*Railroad v. Matula*, 79 Tex. 577; *Nelson v. Wallace*, 57 Mo. App. 397; *Markham v. Herrick*, 82 Mo. App. 327; *White v. Hermann*, 51 Ill. 243; *Green v. Ins. Co.*, 134 Ill. 310; *Village of South Danville v. Jacobs*, 42 Ill. App. 533; *Crane Co. v. Stammers*, 83 Ill. App. 329; *Cooke Brewing Co. v. Ryan*, 98 Ill. App. 446; *Barhyte v. Summers*, 68 Mich. 341; *Ward v. Dick*, 45 Conn. 235; *Perkins v. Rice*, 187 Mass. 28)."

In that case, as in this one, the trial court limited the number of witnesses so as to permit only one witness to be examined after announcing the rule. This fact lends additional support to the contention of counsel for appellants in this case, though we are inclined to the view that their contention would be well founded in the absence of this fact.

In *Johnsen v. Johnsen*, 78 Wash. 423, 139 Pac. 189, 1200, Judge Gose, speaking for the court, made this observation:

"While the trial court may and should exercise a discretion as to the number of witnesses that may be called in a case, or upon a particular issue in a given case, this discretion does not clothe the court with the arbitrary power to deny a litigant the right to offer testimony which reasonably tends to support his theory of the case or to disprove the theory of his adversary."

The latter portion of these remarks lends support to the contention of counsel for appellants though it may be that the first portion thereof furnishes some ground for the contention made in respondent's behalf. That seems not, how-

ever, to have been a controlling question on the appeal, and we think the first portion of the learned judge's remarks suggest too broad a rule except possibly as applicable to very extreme cases. Indeed, the remarks seem to have been made only as a general observation by way of argument rather than as an opinion as to what the limit of the rule might be. In *Swope v. Seattle*, 36 Wash. 113, 78 Pac. 607, there was involved the question of limiting the number of expert or opinion witnesses as to the value of real property, where it was held that the trial court in its discretion might do so. That, however, is quite a different question from the one here involved.

It is contended in respondents' behalf that the error, if committed by the trial court in limiting the number of witnesses, is not reviewable here because there was no sufficient offer of proof made by counsel for respondent as to what the two additional witnesses would testify to. In support of this contention, we are cited to the decisions of this court in *Norman v. Hopper*, 38 Wash. 415, 80 Pac. 551; *Chlopeck v. Chlopeck*, 47 Wash. 256, 91 Pac. 966, and *Hightower v. Union Savings & Trust Co.*, 88 Wash. 179, 152 Pac. 1015. We think the holding in all of these cases can be differentiated from the question here presented. In the *Norman* case, a witness was upon the stand and was interrogated as to negotiations leading up to the making of the agreement in question and was not permitted to answer upon objection of opposing counsel. The court held that the claimed error was not reviewable because the record did not show "that the answer would be material" and the record did not inform this court what counsel expected to prove. In the *Chlopeck* case, a witness was upon the stand being interrogated and was not permitted to answer certain questions propounded to him which questions did not upon their face disclose the materiality of the answers sought, nor was it stated by counsel what he expected to prove by such answers. It was there

also held that this court was unable to determine whether or not the trial court erroneously excluded the answers. In the *Hightower* case, a witness was upon the stand being interrogated when he was asked to state conversations had between himself and the president of the defendant. He declined to testify upon the ground that the conversation was privileged since it was made to him in his capacity as attorney for the defendant. Again this court ruled that, assuming the conversations were not privileged, it was unable to tell whether or not the court erred in excluding the evidence because it was not stated what those conversations were so as to show their materiality. We think none of these cases are controlling here. None of them involved the limiting of the number of witnesses a party might produce.

While it was not stated just what the two excluded witnesses would testify to in giving their versions of how the accident here in question happened, it was stated that they were eyewitnesses to the accident, viewing it from different angles than it was viewed by other witnesses. The remarks of the learned trial judge renders it plain that he assumed, as counsel did, that the testimony of these witnesses would be competent, relevant and material to the main issue of defendants Calhoun and Gassar's negligence. In other words, it clearly appears that the evidence was not excluded because it was incompetent, irrelevant or immaterial, but solely because of the ruling of the court limiting the number of eyewitnesses to the accident which might be produced and examined in behalf of appellants. We are constrained to hold that the trial court erroneously excluded the testimony of these witnesses. The law furnishes the presumption that this was to appellants' prejudice.

Contention is made in appellants' behalf touching the court's giving and refusing to give requested instructions to the jury. The substance of counsel's complaint in this behalf is that the instructions as given were confusing, due to

the trial of the issue of damages arising upon respondent Mogelberg's claim against all the defendants with the issue of defendant Calhoun's claim of damage against Gassar, in that the court did not, in its instructions, distinguish, with sufficient clearness to the jury, between these two controversies. The requested instructions which were refused, it is insisted, would have made this matter clear to the jury. Whatever error there may have been in this regard cannot occur upon a new trial, in view of the fact that the controversy between Calhoun and Gassar is no longer an open one. We therefore deem it unnecessary to notice this contention.

Another contention made in behalf of appellant Mrs. Calhoun seems to call for notice here, in view of our conclusion that appellants are entitled to a new trial, to the end that it be not repeated upon the entry of any judgment which may be rendered in respondent's favor upon a new trial. Both the allegations of respondent Mogelberg's complaint and the evidence given upon the trial renders it plain that whatever liability Mrs. Calhoun incurred by reason of her husband's negligence was only against her as a member of the community consisting of herself and defendant C. E. Calhoun, her husband. The judgment rendered against her, read literally, seems to render her separately liable since it reads "that plaintiff have judgment against C. E. Calhoun and Mary I. Calhoun, his wife, and Pacific Coast Casualty Company, a corporation, *and each of them.*" Looking to the record as a whole, we are inclined to believe that this was more a matter of oversight on the part of the clerk entering the judgment than a deliberate act of the court. We notice this error in the judgment to the end that it may be avoided at the conclusion of another trial should verdict and judgment go against appellants and the showing be no different touching Mrs. Calhoun's community and separate interests than appears in this record.

We conclude that appellants Calhoun and wife and the Casualty Company are entitled to a new trial *as against*

plaintiff Mogelberg. It is so ordered and the cause is re-manded to the trial court for further proceedings not inconsistent with the views herein expressed.

MORRIS, MOUNT, and HOLCOMB, JJ., concur.

FULLERTON, J. (concurring)—I am unable to concur in the foregoing opinion in so far as it orders a dismissal of the appeal as to defendant Gassar. The appellants served upon Gassar and filed, in due time, a notice of appeal, and entered into a bond which they thought perfected their appeal to this court. In answer to the motion to dismiss, they have asked to be permitted to perfect the bond upon such terms as the court may impose, if the bond is deemed insufficient. The request the majority denies, because it considers the bond given in effect no bond since defendant Gassar is not named therein, and this although it is conceded apparently that the appellants would be allowed to perfect the bond had Gassar been so named, however defective the bond might otherwise be. In my opinion, the rule applied is not only harsh and technical, but contrary to both the letter and the spirit of the section of the statute of 1915 quoted in the opinion (Rem. Code, § 1730-9).

On the merits of the controversy, I concur with the majority.