[No. 19539.   Department One.   December 22, 1925.]

FIRST NATIONAL BANK OF KELSO, *Respondent*, v. L. E.
HART *et al., Respondents*, J. F. DELONG
*et al., Appellants.*[1]

[1] SALES (176)—CONDITIONAL SALES—FILING OR RECORDING—NECESSITY.   A conditional sale of cattle, not recorded or indexed as a conditional sales contract of personal property is required to be, is null and void as to subsequent encumbrancers.

[2] APPEAL (384)—REVIEW—PARTIES ENTITLED TO ALLEGE ERROR—ERROR AS TO COPARTY NOT REVIEWED.   Appellants, claiming a prior lien in a chattel mortgage foreclosure which involved various chattel mortgages and liens, and who only gave notice of appeal and an appeal bond to the successful mortgagee who had intervened and had the foreclosure proceedings removed to the superior court, is in no position to question the rights of other mortgagees, or to ask the court to review the matters involved between him and the other parties not served.

[3] CHATTEL MORTGAGES (13)—FORM AND CONTENTS—DESCRIPTION OF PROPERTY—CERTAINTY.   A chattel mortgage of cattle is too indefinite and uncertain, where they are described as "thirty head of cows and thirty head of heifers, all guernseys  .  .  . located on what is known as the Marion Smith place," where the mortgagor had 137 head of cattle at that place, old and young, there was no separation of the stock when the mortgage was given, and they were afterwards commingled with other stock until it was impossible to identify them.

[4] CHATTEL MORTGAGES (43-2)—LIEN AND PRIORITY—SUBSEQUENT BONA FIDE MORTGAGES—EVIDENCE OF GOOD FAITH—SUFFICIENCY.   Findings that a bank took a chattel mortgage on 137 head of cattle, located on a certain ranch, in good faith without actual knowledge of a prior unrecorded mortgage on sixty head of the stock, or of notice to put it on inquiry, are sustained, where it appears that the mortgagor had 100 head of cattle at another place, and upon inquiry as to the cattle covered by the unrecorded mortgage, the mortgagor delivered to the bank a statement signed by the other mortgagee to the effect that the cattle mortgaged to him were at the other place; it further appearing that the description in such mortgage was so indefinite that identification of the stock was impossible.

[1]Reported in 241 Pac. 675.

Appeal from a judgment of the superior court for Cowlitz county, Kirby, J., entered August 28, 1924, upon findings in favor of the plaintiff, in an action to foreclose a chattel mortgage, tried to the court. Affirmed.

*Miller, Wilkinson & Miller,* for appellants.
*Atwell & Moore,* for respondent.

Holcomb, J.—A noticed motion herein to dismiss was passed to the merits and is now denied by reason of our determination on the merits.

This complicated affair grows out of the claimed rights under several conflicting chattel mortgages and a conditional bill of sale.

In April, 1923, Hart, the mortgagor, and also the vendee in the conditional sale contract involved herein, who had been operating a dairy ranch near Kalama, Cowlitz county, also began operations on a place known in the record as the Marion Smith place, about two miles north of Kelso. He purchased certain cattle from Holbrook, one of the mortgagees involved herein, and gave his notes which Holbrook assigned to Jackson. To secure these notes, Hart gave a chattel mortgage on the fifty head of cattle purchased from Holbrook, and also on fifty head of cattle which Hart removed from Kalama to the Marion Smith ranch. This chattel mortgage was not filed for record nor indexed until long after the execution and filing of the mortgage given to the respondent bank, which was given priority herein by the trial court.

When Hart removed from Kalama, he brought with him a total of ninety-three head of cattle, fifty of which were included in the Holbrook mortgage. Leichhardt owned a dairy ranch about one mile south of Kelso. Prior to July, 1923, he had contracted to sell the ranch

and cattle to the DeLongs, appellants herein. About July 1, Hart negotiated with the DeLongs a deal whereby they cancelled their arrangement with Leichhardt; and as a consideration therefor, Hart gave DeLongs a note for $8,000, secured by a mortgage on sixty head of cattle on the Marion Smith place. At the time this mortgage was given, there were one hundred and sixty-seven head of cattle on the Smith place, being sixty-seven head in addition to the one hundred head covered by Holbrook's mortgage. When the DeLongs took this mortgage they knew of the Holbrook mortgage. The DeLongs did not file their mortgage for record within ten days after its execution, but did file it for record about twelve days after its execution.

[1] After the cancellation of the DeLong-Leichhardt deal, Hart contracted to purchase the Leichhardt ranch and cattle. A conditional sales contract was executed covering, among other things, seventy-one head of Leichhardt's cattle, then on the Leichhardt place. This conditional sales contract was not properly recorded and indexed as a conditional sales contract of personal property is required to be, and we give it no further consideration than was given by the trial court, which held that it was null and void as to respondent bank, and which determination was certainly correct.

After the consummation of the deal between Hart and Leichhardt, Hart moved his dairy operations to the Leichhardt ranch, moving some one hundred and thirty-seven head of cows from the Marion Smith ranch to the Leichhardt ranch. In September, 1923, some forty head were moved back from the Leichhardt place to the Smith place. On December 4, 1923, Hart executed, and on December 5, delivered, to the bank a note for $5,000; and, as security therefor, a chattel mortgage in the sum of $5,000 on one hundred and twenty-seven

head of cows, the cattle on the Leichhardt place. This mortgage was duly filed within ten days after its execution. About December 20, following, an additional band of seventy-five head of cattle were taken from the Leichhardt place to the Marion Smith place.

In February, 1924, Holbrook started foreclosure proceedings by notice and sale. At that time, Hart had disappeared. At the same time, Leichhardt started to repossess the cattle covered by his conditional sales contract. A large number of cattle claimed by Holbrook to have been covered by his mortgage were driven from the Leichhardt place to the Marion Smith place by Holbrook and the sheriff. A large number were also driven from the Marion Smith place to the Leichhardt place by Leichhardt; and each of these parties were endeavoring to get possession of the cattle which they claimed were covered by their mortgages and bill of sale respectively. The respondent bank thereupon intervened, and had the foreclosure removed to the superior court. Before these foreclosures were instituted, some forty head of cattle had disappeared from Hart's herd, some probably by death, and some by sale.

The DeLong mortgage is very indefinite and imperfect in description. It describes the property intended to be mortgaged as follows:

"The following personal property described as follows: Sixty head of cattle, or thirty head of cows and thirty head of heifers all being guernseys. Said cattle are now all on what is known as the Marion Smith place. [The mortgage then includes some other property not here involved.]    . . .    The grantors expressly represent and agree that they are the sole owners of all the above described personal property and that the same is free and clear of all incumbrances, and that the same is now in . . . possession in said county."

It will be observed that there is no description given of the cattle except "thirty head of cows and thirty head of heifers, all guernseys," and "located on what is known as the Marion Smith place." It is not even stated that they are in the county where the mortgagors resided, nor that they were in their possession, but the statement as to whose possession they were in was left blank.

The mortgage from the Harts to respondent bank contained a fairly accurate description of the cattle mortgaged to the bank with some few exceptions, and also located them as being on the Hart dairy ranch, situated in the northeast quarter of section 3, Township 8 North, Range 2 West, Willamette Meridian, and specifically stated that the cattle mortgaged were in the possession of the mortgagors in Cowlitz county.

Appellants contend that the mortgage of respondent is junior and inferior to their mortgage, because taken with actual knowledge of the existence of the mortgage to appellants, and because of the failure on the part of respondents to make a sufficient showing of good faith. Appellants also contend that the Holbrook mortgage is secondary to theirs because the cattle in the Holbrook mortgage were imperfectly described, and that Holbrook received forty-eight more head of cattle from the sheriff than his mortgage authorized.

[2] Appellants are in no position to attack the determination of the rights of Holbrook, nor of Leichhardt, because they only gave notice and bond to respondent bank. While this is an equity case, and we will review the matters as to the parties before us, we will not review on appeal anything concerning any of the other parties to this tangled litigation, not brought before us properly on appeal. *Mogelberg v. Calhoun,* 94 Wash. 662, 163 Pac. 29.

The trial court, after examining all of the evidence, determined that the DeLong mortgage was void both as to respondent and as to Holbrook and Leichhardt, because taken with knowledge of the existence of the Holbrook mortgage, and covered cattle not separated from those included in the Holbrook mortgage, and as to Leichhardt because taken with knowledge of the existence of the sales contract and for the further reason that it did not cover any of the Leichhardt cattle; and, as to the respondent bank, because not recorded or filed within the time prescribed by law, and because it was not shown that the bank had knowledge of its existence, or information concerning it from which it could be held that the bank was a purchaser in bad faith, or not a purchaser in good faith.

[3] The trial court was also of the opinion that the description of the cattle in all of the mortgages and in the conditional sales contract was indefinite, and not such as to enable a person to single them out by reference to the instrument descriptions. If the above conclusion was correct as to the mortgage of respondent bank, it certainly was much more so as to the mortgage of appellants.

Appellants cite several cases from this court to the effect that subsequent purchasers and mortgagees are not protected unless they take their conveyances in good faith, and that they cannot take them in good faith if they have knowledge of an antecedent mortgage. *Hinchman v. Point Defiance R. Co.,* 14 Wash. 349, 44 Pac. 867; *Othello State Bank v. Case Threshing Machine Co.,* 113 Wash. 680, 194 Pac. 563; *Robinson, Thieme & Morris v. Whittier,* 112 Wash. 6, 191 Pac. 763; *Clark v. Kilian,* 116 Wash. 532, 199 Pac. 721.

Appellants also rely upon certain evidence to the effect that the DeLongs, wishing to dispose of the Hart mortgage, offered it for sale to the managing officer of

respondent, with a copy of the mortgage as filed. It is also insisted that, since respondent had knowledge of the fact that there was a mortgage filed of record from the Harts to the DeLongs covering certain cattle, as to any cattle included therein it would be, at least, thereby put upon inquiry, and anything ascertained by proper inquiry, or which should have been ascertained, would be sufficient to impute bad faith on the part of respondent in taking its mortgage.

[4] The record, however, discloses that the managing officer of respondent not only made inquiry himself, but had his attorney search the records of Cowlitz county for mortgages on the Hart cattle at the time respondent was about to take the mortgage from Hart. At the time the Harts gave their mortgage to DeLongs they had about two hundred thirty-eight head of cattle on the two places,—the Marion Smith place mentioned in the DeLong mortgage, and on the Leichhardt place. There were apparently about one hundred thirty-seven head of cattle on the Marion Smith place at one time, and at the time appellants took their mortgage there had been no separation of the cattle upon which they took their mortgage, and there was no other designation of them than sixty head of old and young cattle. Thereafter they were intermingled and changed so much that it would have been impossible for anyone to identify any of the cattle covered by appellants' mortgage. Furthermore, when respondent began its inquiry as to the mortgages on the Hart cattle on which it was offered security by Hart, it inquired of Hart as to the cattle included in the DeLong mortgage.

At the time the mortgage was delivered by Hart to respondent, a statement was submitted to Mr. Bashor, the managing officer of respondent, as follows: ''The cattle that I hold a mortgage on Mr. Hart's lease are

at Kalama, Wash. Yours truly, M. W. DeLong."
M. W. DeLong denies that he signed that statement. It
is on an envelope which had been addressed to Mr.
Hart, and mailed at Kelso, December 4, 8 P. M.,
1923. A comparison of the signature of M. W. De-
Long on the statement with other known signatures on
documents in the record will convince anyone familiar
with handwriting that the signature on the other in-
struments in the record, known to be the signatures of
M. W. DeLong, and that attached to this statement are
made by one and the same person.

·While the facts are, of course, not conclusive as to
the good faith of the bank, they are very persuasive
that the bank exercised good faith in attempting to
ascertain what property was covered by appellants'
mortgage, and did ascertain to the best of its ability,
and in doing so discovered apparently that the cattle
covered by the mortgage of appellants were at Kalama,
Washington.

Appellants cite the case of *Frick v. Fritz,* 115 Iowa
438, 88 N. W. 961, 91 Am. St. 165, holding that a very
general description of animals in a chattel mortgage
is good as between the mortgagor and mortgagee
where the property was in the possession of the mort-
gagor in the county designated, and were separated
from other cattle of similar description when the
mortgage was given, and that such mortgage was not
rendered invalid as to subsequent attaching creditors
by the subsequent act of commingling the mortgaged
cattle with other similar cattle.

In this case, the cattle attempted to be mortgaged
were not separated from the other cattle; there were
quite a number of the same species and description,
and were not described as being in the possession of the
mortgagors. We heartily concur with the authorities
cited by appellants which have generally been followed

in this state, to the effect that notice is sufficient if it puts a party upon such inquiry that if prosecuted would lead to knowledge of the rights with which the property is incumbered.

We cannot, however, agree with the argument of appellants, that such inquiries as were suggested by the belated filing of appellants' chattel mortgage, and their notice to respondent of the chattel mortgage, could have led to anything more than that appellants had a mortgage on sixty head of cattle, which, at the time of giving the mortgage were not so described as to enable anyone to identify the particular cattle, which were then described as located on the Marion Smith place, and which were immediately commingled with cattle of like breed and character on another place three miles distant. In other words, what respondent could and would discover was only that the Harts had a large number of cattle; that they had these cattle on two different places; that they had previously operated upon another place more distant in the same county; that the cattle were being shifted back and forth from one place to another; that some of the cattle were of one breed and some of another; that some were branded and some unbranded; that some were old and some were young. Appellants had seen fit to accept a mortgage upon thirty head of old cattle and thirty head of young cattle, described as guernseys, when there was a large additional number of guernseys on the two places unbranded and unidentified in any way.

Without unnecessarily elaborating this opinion, for further discussion of such question as now before us, see the cases of *Golden v. Cockril,* 1 Kans. 259, 81 Am. Dec. 510; *Huse v. Estabrooks,* 67 Vt. 223, 31 Atl. 293, 48 Am. St. 810; *Jacobsen v. Christiansen,* 18 Utah 149, 55 Pac. 562; *Ehrke v. Tucker,* 99 Kan. 52, 160 Pac. 985;

*Sigel-Campion Live Stock Co. v. Holly*, 44 Colo. 580, 101 Pac. 68; *Lee County Savings Bank v. Snodgrass Bros.*, 182 Iowa 1387, 166 N. W. 680.

We are well satisfied, as was the trial court, that respondent bank met the test of good faith, after notice by filing of record of their mortgage by appellants, and that the mortgage of respondent is prior and superior under the circumstances of this case to that of appellants.

In that and all other respects the decree of the trial court is affirmed.

TOLMAN, C. J., ASKREN, FULLERTON, and MACKINTOSH, JJ., concur.