[No. 18286.  *En Banc.*  February 11, 1924.]

# JULIA K. OLMSTEAD et al., *Respondents,* v. HENRY McCLEARY, *Appellant.*[1]

APPEAL (220)—NOTICE—PARTIES ENTITLED—SERVICE ON ATTORNEY. Where a minor plaintiff, having become of age, was named as a party in the judgment entered, service of notice of appeal upon the attorney who represented him after he became of age is sufficient, although he was not named in the notice of appeal.

SAME (195, 207)—BONDS—OBLIGEE—ADVERSE PARTY—DEFECTS—AMENDMENT. Where a minor plaintiff, having become of age, was named as a party in the judgment entered, an appeal bond which runs to the guardian as such, but not to him individually, is a sufficient compliance with Rem. Comp. Stat., § 1721, requiring a bond to the adverse party; the defect, if any, being of form only, and amendable under Id., § 1734 (MACKINTOSH, J., dissenting).

EXECUTORS AND ADMINISTRATORS (134)—SALES—TRUST RELATIONS—CONSTRUCTIVE FRAUD—EVIDENCE—SUFFICIENCY. No constructive fraud through a relationship of trust toward a widow and children is shown by an administrator's advising the sale of corporate stock in a corporation of which he was the principal stockholder, where the company, though prosperous, had never paid dividends and money was needed for the support of a widow and three minor children.

SAME (134)—SALES—FRAUD—PROCEEDS OF SALE—PAYMENT IN CASH. Constructive fraud is not shown in such a sale by the fact that the sale was reported as a cash sale, but no cash passed, the stock being transferred on the books of the company and the price charged against the purchaser's account and credited to his own account; where the company was accustomed to act as a banker, there being no bank in that locality.

SAME (134). The word trustee in debiting the account of the purchaser, which was only used to identify the transaction, does not establish that the purchase was in trust for the heirs.

SAME (134, 136)—SALES—VALIDITY—NOTICE AND NECESSITY—COLLATERAL ATTACK. An executor's sale of personalty under order of court is not void or voidable because beyond actual necessities, and it cannot be collaterally attacked because minor heirs were not represented.

[1]Reported in 223 Pac. 15.

SAME (134)—SALES—FRAUD—INDIVIDUAL BENEFITS. An executor's sale of stock in a corporation in which he was the chief stockholder, will not be presumed to have been made for his own benefit so as to keep control thereof through a sale to one of his own family.

PEMBERTON, J., dissents.

Cross-appeals from a judgment of the superior court for Grays Harbor county, Reynolds, J., entered August 3, 1923, in favor of the plaintiffs, in an action for an accounting, tried to the court. Reversed.

*W. H. Abel, M. F. Gose,* and *E. S. Avey,* for appellant.
*Paul & Barker, Riddell & Brackett, Peters & Powell,* and *Alfred J. Schweppe,* for respondents.

TOLMAN, J.—Both parties to this action have appealed from the judgment below, and for convenience they will be referred to throughout as plaintiffs and defendant, except as reference to some individual plaintiff may be necessary.

John W. Olmstead was an employee of the Henry McCleary Company, a corporation, engaged in the lumber and timber business, and in 1901 or 1902, by the investment of accumulations amounting to some $1,200, and perhaps by his earnings in part, he acquired certain stock in that company. Thereafter, about 1906, the Henry McCleary Timber Company was incorporated and succeeded the Henry McCleary Company. Olmstead became the owner of 119⅛ shares of the stock, of the par value of $11,912.50, out of its total capital of $250,000. The remainder of the capital stock was owned by Henry McCleary, 983 13/16 shares, George Osgood, a like amount, William McCleary, 298⅛ shares, and the remainder in small amounts by others who were mostly employees of the company.

Olmstead died intestate in 1908, leaving surviving him his wife and three minor children. His estate consisted of this stock, an automobile afterwards ap-

praised at $350, a small amount due him from the company as salary, and $1,000 in life insurance, which was probably payable to the widow and no part of the estate proper, at any rate this $1,000 was collected by the widow and deposited with the Henry McCleary Timber Company and thereafter drawn upon as she had need for funds for the maintenance of the family.

In 1910, nearly a year and a half after Mr. Olmstead's death, on petition of the widow, Julia K. Olmstead, Henry McCleary was appointed administrator of the estate, duly qualified, and in August of that year he, jointly with Julia K. Olmstead, petitioned the court which had jurisdiction of the estate for an order for the sale of this stock. The petition sets out:

"That the entire estate, so far as known, consists of 119⅛ shares of stock in the Henry McCleary Timber Company, which has been appraised at the sum of $23,825, and one Reo automobile, which has been appraised at the sum of $350; that said shares of stock constitute a minority interest and no dividends have ever been declared and it is not the policy of the company to declare dividends; that the petitioners believe it to be for the best interests of the estate and the heirs that said personal property be sold at either public or private sale as the court may consider best and that the proceeds of the sale be invested in some income producing property; that there are no funds on hand wherewith to pay the expenses of administration and it will be necessary to reduce part of the personalty to cash in any event."

A hearing was had and an order made directing the stock to be sold at public auction on ten days' notice. The notice was duly given and the stock sold to William McCleary at $200 per share, which was its appraised value. The sale was reported as being for cash, and was by the court confirmed on September 17, 1910. It appears that the actual steps taken to complete the sale

were the endorsement and surrender by the administrator of the Olmstead stock certificate to William McCleary, the charging of the purchase price to William McCleary on the books of the Henry McCleary Timber Company, and a corresponding credit being made on those books to Henry McCleary, administrator. This is explained by the uncontradicted evidence that the business of the Henry McCleary Timber Company was carried on at a place remote from banking facilities, and that it customarily acted as a banker for its officers and employees and perhaps others in the community, so that except for the amount involved, the transaction was in no way unusual. In October following the sale, the administrator and Julia K. Olmstead jointly petitioned the court for an allowance of $100 per month to be paid from the proceeds of the sale, to the widow for the support of herself and minor children, dating from the death of Mr. Olmstead, and on October 22, 1910, an order for the payment of such allowance was made.

In January, 1911, the widow again petitioned the court for a partial distribution of the estate, again setting up the sale and its results, and in March, 1912, the administrator made his final report, due notice was given, a guardian *ad litem* for the minors was appointed, and after the hearing a decree of final distribution was entered in the probate proceedings on April 6, 1912.

Mr. McCleary did not then, however, distribute the funds to the widow and children, but continued, as before, to hold the money, act as their man of business, send to the widow $100 per month, which he claims represented the interest at six per cent per annum on the credit still shown by the books of the Henry McCleary Timber Company, until by the payment to the widow of

considerable sums which she asked for to invest in a
home, the credit was so reduced that the interest there-
on aggregated but $80 per month, and that sum was
thereafter remitted to her monthly. This continued
until January, 1920, when, the minor son, Clifton E.
Olmstead, having asked for certain advances, it is
claimed that discovery was then for the first time made
that the stock had been sold. Mrs. Olmstead denies
any knowledge or recollection of any of the proceedings
for the sale of the stock, the contents of the several
petitions signed by her, or the disbursement of the pro-
ceeds of the sale, and the plaintiffs all assert that up
to that time they fully believed that they were still the
owners of the stock and had been receiving only its
earnings. Needless to say the stock has greatly ap-
preciated in value since the death of Mr. Olmstead.
The corporation has been a prosperous one. Its state-
ment made May 1, 1910, about the time of the initiation
of the probate proceedings, shows a surplus of
$211,973.62, though its assets were largely non-liquid
in character, for the most part being in plant, equip-
ment and timber holdings, while at the time of the trial
below Mr. McCleary testified that the stock was worth
about $1,000 per share, and the judgment of the trial
court is based on that figure.

There are many other facts and details involved,
some of which will be mentioned as we proceed, and all
of which ascertainable from the record, whether here
mentioned or not have been considered.

The amended complaint, upon which the case was
tried, charges both actual and constructive fraud on
the part of the defendant in carrying through a pre-
tended and colorable sale of the stock for his own bene-
fit and purposes without the knowledge or consent of
those beneficially interested. The trial court found

there was no actual fraud, but that there was constructive fraud, chiefly in that the stock was paid for by bookkeeping entries and that actual cash did not pass from hand to hand.

One of the minor children having died, the two remaining children succeeded to his interest, and to them each was granted judgment for $27,731.16, the aggregate of the two being the value of one-half of the stock at $1,000 per share. Julia K. Olmstead, the widow, was denied relief upon the ground that by her subsequent acts she had ratified the sale. Clifton E. Olmstead was still a minor when the suit was brought, and was represented throughout by Julia K. Olmstead, his guardian, but he became of age a few days before the final decree was entered, and the judgment in his favor is therein set forth in these words:

"It is further ordered, adjudged and decreed that the plaintiff Julia K. Olmstead, as guardian of the estate of Clifton E. Olmstead, a minor, and Clifton E. Olmstead, who since the institution of this suit has become of age, jointly have and recover of and against the defendant, Henry McCleary, a judgment in the sum of $27,731.16."

The first question to be considered is raised by a motion on behalf of the plaintiffs to dismiss the defendant's appeal, first, because of the supposed insufficiency of the notice of appeal, and second because of the supposed insufficiency of the appeal bond.

The notice of the appeal is entitled as is the complaint and all papers filed subsequently in the cause; does not name Clifton E. Olmstead individually as a plaintiff, and refers to him only by naming as one of the plaintiffs "Julia K. Olmstead as guardian of the estate of Clifton E. Olmstead, a minor," and proceeds: "To the plaintiffs above named:" The point raised is that Clifton E. Olmstead, on attaining the age of

twenty-one years, was entitled to assume control of all of his property and property rights, which fact was recognized in making the judgment run in his favor jointly with the guardian, and that therefore the notice of appeal is ineffectual unless served on him. The question as to the sufficiency of the appeal bond is a similar one. The bond runs in favor of Julia K. Olmstead as guardian, etc., and does not in terms run to Clifton E. Olmstead as an individual.

The statute, Rem. Comp. Stat., § 1719 [P. C. § 7293], does not specify the form of a notice of appeal, and provides that such a notice shall be served on the prevailing party or his attorney. The words ''To the plaintiffs above named,'' or any like caption, are not required and are mere surplusage. The notice was properly served upon the attorney who represented Clifton E. Olmstead as an individual after he became of age, as well as his guardian and all of the prevailing parties, and that was a compliance with the statute. *In re Murphy's Estate*, 26 Wash. 222, 66 Pac. 424; *Sipes v. Puget Sound Electric R. Co.*, 50 Wash. 585, 97 Pac. 723.

Whether or not the appeal bond was sufficient presents a far more difficult question. The statute, Rem. Comp. Stat., § 1721 [P. C. § 7295], provides that an appeal ''shall become ineffectual for any purpose unless . . . an appeal bond to the adverse party . . .'' be filed as therein specified. Plaintiffs rely on *Robertson Mortgage Co. v. Thomas*, 63 Wash. 316, 115 Pac. 312, and *Crawford v. Seattle, Renton & Southern R. Co.*, 92 Wash. 670, 159 Pac. 782, where it was held that a party to the judgment, though not a party to the suit originally, is entitled to be served with notice of appeal, and therefore, it is argued, is entitled to be named in the bond; and also upon *Den Bleyker v. King County*,

108 Wash. 687, 185 Pac. 613; *Salvino v. Taylor Mill Co.,* 102 Wash. 507, 173 Pac. 433; *Mogelberg v. Calhoun,* 94 Wash. 662, 163 Pac. 29, and *Sisson v. Harvey,* 123 Wash. 650, 212 Pac. 1052.

The *Mogelberg* case, *supra,* presents a very different situation. There one of the defendants cross-complained against the other defendant. The cross-complaining defendant was exonerated from all liability to the plaintiff, and recovered a judgment against his codefendant on his cross-complaint. The plaintiff likewise recovered judgment against the same defendant. The judgment debtor in attempting to appeal from both judgments gave a bond in favor of the plaintiff only, and it was there held that such bond was ineffectual to perfect his appeal from the judgment in favor of the cross-complaining defendant, but was sufficient to perfect the appeal from plaintiff's judgment.

In the *Salvino* case, *supra,* the contest was between two creditors of an insolvent as to the priority rights of their respective claims. On appeal the bond ran to the receiver of the insolvent company and not to the adverse party. Clearly these cases present situations where the adverse party was entirely without the protection of the bond, and upon affirmance of the judgments in either case the prevailing party could not have recovered upon the bond which was there given. So in the *Den Bleyker* case, *supra,* there were no sureties, the bond being by the judgment debtors only, and hence the prevailing party was without the security which the statute commands. The facts do not appear in the *Sisson* case beyond the statement that the bond was not given to the adverse party, and therefore we consider it likewise distinguishable, as will more fully appear as we proceed.

What is the judgment appealed from? It is entered in an action waged by a guardian, tried during the

ward's minority, and the judgment entered after he attained his majority. Had the judgment run in favor of the guardian only, would it have been void or uncollectible upon the ward's coming of age? The cause of action was his at all times, but he could not assert it in his own person during minority. Yet, if the guardian had not collected it, he could have done so in his own right upon coming of age. The form of words used is immaterial. It is a judgment upon his cause of action which he may collect and discharge of record after reaching full age. So, also, the bond. It is given to perfect an appeal from the judgment entered on that cause of action, and the ward, upon coming of age, could recover upon that bond just as readily as though it named him individually as obligee. It seems to us that the true test of the sufficiency of an appeal bond must be whether or not the person who has the right to the proceeds of the judgment appealed from can recover upon it. If there can be no recovery upon the bond, then the respondent is without the security which the statute provides and there is no bond. If there can be a full recovery upon the bond, then it would be a manifest absurdity to dismiss the appeal because the office of the bond has been fulfilled.

At the most, the defect, if any, in the notice of appeal and in the appeal bond is of form only, affecting no substantial rights, and is therefore amendable under § 1734, Rem. Comp. Stat. [P. C. § 7319].

The motion to dismiss the appeal is denied.

Coming now to the merits of the case, the discussion may be shortened by saying that, after a painstaking perusal of the record, we are abundantly satisfied that the evidence fully supports the trial court in his view that no actual fraud has been proven. That leaves for consideration only the question of constructive fraud, which, if we apprehend the plaintiff's position, is

thought to be established by some one or more of the following conditions:

(a)   That the defendant, occupying a relationship of trust toward the widow and minor children, was bound to advise them for their best interests, even though his own interests were thereby adversely affected.

Assuming this to be a correct statement of his duty, the evidence, as clearly as that may be done after such a lapse of time, establishes that he did so.   The defendant testified quite fully to talking over her affairs with Mrs. Olmstead from the beginning, and if this evidence be denied at all, such denial goes only to her now having no recollection whatever on the subject.   What was the condition upon which advice should have been given?   Here was a dependent widow with three minor children to support, having as her principal asset this small minority holding in a corporation in whose management she could have but little voice, and could not hope to control, which never had paid dividends, though prosperous so far, was not then in a position to declare dividends, whose settled and announced policy was against declaring dividends, and whose future was dependent upon conditions which no one could with any certainty foretell.   Moreover, it was engaged in a business with a history of ups and downs, now a prosperous year or period of years, and then a period of stagnation, and perhaps loss.   Who shall say that the defendant did not exercise his honest judgment, as a matter of law, in so advising and so acting as to remove the financial affairs of this widow and her children from the hazards of such a business, especially when the amount which could then be and was realized was sufficient to earn a comfortable livelihood for the dependent family without diminution of the principal.

Constructive fraud cannot be drawn from the trust relationship under such conditions.

(b)   But it is urged that the sale was not in fact for cash, and there was fraud in so reporting it. We cannot so view the admitted facts. The transaction was wholly a banking one, and therefore a bookkeeping one, it is true; and yet if the Henry McCleary Timber Company had in fact been a bank, and if William McCleary had drawn his check or order on that bank for the amount of the purchase price, passed it to the defendant, and he in turn deposited it in the same bank, the same identical bookkeeping would have been required, and the same results exactly would have been obtained. It is not even contended that the proceeds of the sale were not at all times available for disbursement under the direction of the court, as much as though in actual legal tender in the administrator's hands. The plaintiffs may not here complain that the Henry McCleary Timber Company was not in fact and in law a bank. Their demand is against the defendant, and against him alone, and they, not being in any wise affected or injured by the acts of the corporation, cannot raise the question of its powers.

(c)   William McCleary's account with the corporation concerning this transaction was carried as William McCleary, trustee, and it is said that there being no beneficiaries of the trust in existence at the time William McCleary purchased the stock, there was no trust and the transaction is void. True, the testimony shows that William McCleary purchased with the view of giving others the benefit of his bargain, and in part that such others failed to complete the transaction, but he was not then bound to make a resale. The prospective purchasers could not have compelled him to transfer the stock to them, nor could they have recovered damages for his failure to do so. There was no trust,

therefore, and if the corporation described William
McCleary as trustee the word was used to identify this
particular transaction as between William McCleary
and the corporation and had no effect otherwise.

(d)   Sale was made, it is said, without a sufficient
showing of necessity, and without the minors being
represented.   It must be remembered that the stock
was personal property the title to which vested in the
administrator, and not realty the title to which vests in
the heirs.   We know of no rule of law, and none has
been cited, which holds that a sale by an administrator,
under order of the court, of personalty beyond actual
needs is void, or even voidable, or that requires that
the minor heirs shall be represented at the hearing
therefor.   These supposed irregularities, if such they
be, are not such as to open the sale to collateral attack.

(e)   That the sale was made for the benefit of the
defendant to enable him to keep control of the corpora-
tion and parcel out the stock to trusted employees, who
by becoming stockholders would be thereby more
closely bound to the corporation and more loyal and
efficient in its service.   There is sufficient in the evi-
dence to show that the defendant knew and approved of
the final purchase of the stock by employees, but
nothing to show that any other than a person already
identified with the corporation would even consider
such a purchase under the then conditions.   It would
be a violent presumption under such circumstances
to presume that the defendant made the sale to effect
the purpose indicated, and if presumptions are to be
indulged in, we must presume that he was actuated
by a desire to obtain the best possible price for the
stock and knew, as seems reasonable in the light of
the testimony as to prior sales, that only by that
means could the full appraised value be realized.

Many other points more or less collateral to those already discussed have been. raised and argued at length. All of these have been considered, but cannot be here set out and answered without unduly extending this opinion. It must suffice to say that they are either sufficiently answered by what has been said or have no controlling force as against the conditions already found.

The cross-appeal by plaintiffs raises only the questions of the insufficiency of the amount awarded those who recovered by the judgment below, and the denial of any recovery to Julia K. Olmstead. Since we find that no cause of action exists, that disposes of these questions entirely.

The prayer of the amended complaint, upon which the case was tried, is for a full accounting as to the stock and of all moneys in the defendant's hands belonging to the plaintiffs and is broad enough therefore to warrant a judgment for any undisbursed balance of the proceeds of the estate remaining in the hands of the defendant.

The judgment appealed from is therefore reversed with directions to enter a judgment only for such undisbursed balance.

MAIN, C. J., HOLCOMB, FULLERTON, PARKER, MITCHELL, and BRIDGES, JJ., concur.

PEMBERTON, J., dissents.

MACKINTOSH, J. (dissenting)—While I agree that, on the merits, the appellant is entitled to succeed, I can not agree that he has given a proper bond on appeal, under the decision in *Salvino v. Taylor Mill Co.*, 102 Wash. 507, 173 Pac. 433.