In the Matter of the ESTATE of Lottie H. PATRICK, Deceased.

LeGrand PATRICK, Hugh Patrick, and Arthur G. Patrick, Appellants,

v.

Bryan PATRICK, Administrator of the Estate of Lottie H. Patrick, Deceased, Appellee.

No. 3266.

Supreme Court of Wyoming.

Dec. 10, 1964.

William Jones, of Jones & Jones, Wheatland, for appellants.

Joseph F. Maier, Torrington, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

This is an appeal by three heirs of deceased from an order of the probate court confirming a sale to Patrick Brothers, Inc., a Wyoming corporation, of 2,405 shares of its capital stock for the sum of $6,606.17, approximately $2.75 per share.

Following the death of Lottie H. Patrick on May 22, 1951, a son, Arthur G. Patrick, was appointed as administrator upon the request of deceased's nine children. He caused inventory and appraisement to be made, which showed the assets of the estate to be 8,804 shares of Patrick Brothers, Inc., stock, valued at $21,127.60, and a Series E bond, valued at $87.50. Thereafter, on February 8, 1952, he filed a petition setting out the appraised value of the estate items and asking authority to sell at private sale so much of the personal property as necessary to obtain $13,718.82, which his petition showed to be the amount owing by the estate to the corporation for moneys advanced for deceased's support, care, and expenses of last sickness, plus funeral costs and expenses of administration. The court immediately thereafter entered an order authorizing the sale of 5,720 shares of the stock, subject to court approval and confirmation. Nothing regarding the sale occurred in the probate proceeding for some ten years. According to desultory references in the record and argument, various other litigation had been occurring between the heirs during this period.

In 1953 Bryan and Robert K. Patrick, sons, and Carrie P. Bartlett, daughter of deceased, filed a petition offering that each would furnish a bond to the administrator, in such sum as designated by the court, conditioned for the payment of each of the petitioner's shares or proportions of the debts due from the estate and asking that their proportionate share of the estate be delivered. Helen Patrick Ross, Hugh, Arthur G., LeGrand, Edwin, and Luke V. Patrick, children of deceased, filed an objection to this request, and the matter was never directly resolved by the court.

On August 1, 1962, Bryan Patrick filed a petition for the revocation of letters of administration of Arthur G. Patrick, alleging, inter alia, that the administrator had failed to obey the 1952 order of the court regarding the sale of the stock and asserting that he had failed to file proper accounts. The same day Bryan Patrick submitted his own petition to be appointed as administrator. On March 13, 1963, the court, after hearing evidence, found that Arthur G. Patrick had been guilty of unreasonable delay and neglect, that Bryan Patrick was the only applicant for appointment of administrator and by reason of being a son had a prior right of appointment, revoked the letters to Arthur G. Patrick, and appointed Bryan Patrick.

On April 23, 1963, the new administrator filed a report of sale and petition for confirmation, referring to the February 1952 order of the court, reporting that he had sold 2,405 shares of the Patrick Brothers, Inc., stock to that corporation for a price of $6,606.17.

LeGrand, Hugh, and Arthur G. Patrick objected to the petition for confirmation on the ground that Bryan was both the administrator of the estate and the president of the corporation; that he was a majority stockholder therein; that the sales price was unjust, not commensurate with actual value; that the administrator was in fact dealing with himself; and that the stock was worth in the neighborhood of thirteen dollars per share. Bryan Patrick there-

after gave his own consent to the sale of the stock, as did Carrie Bartlett and Grace Patrick, widow of Robert K. Patrick.

After a hearing on the matter, the court on March 2, 1964, confirmed the sale, finding it had been made by the administrator "pursuant to a prior order * * * entered herein under date of February 11, 1952."

The appellants urge that there was failure to comply with (a) § 2–153, W.S.1957, requiring "Every * * * administrator must make and return to the court within a reasonable time after his appointment, a true inventory and appraisement of all of the estate of decedent * * *"; (b) § 2–250, W.S.1957, "All petitions for orders of sale must be in writing, setting forth the facts showing the sale to be necessary * * *"; (c) § 2–253, W.S.1957, permitting applications for orders to sell so much of the personal property as may be necessary to pay the debts of the estate, and (d) § 2–249, W.S.1957, providing that no sale is valid unless under order of the court. Appellants further argue that the administrator failed to comply with the corporate procedures, that the stock was not sold at its fair book value, and that the sale is invalid because Bryan Patrick was a fiduciary and could not deal with himself, which he in fact did.

■ We turn first to the insistence that Bryan Patrick, the successor-administrator, failed to comply with the statutory requirement of making and returning a true inventory and appraisement within a reasonable time and the inference that such omission was fatal. No authority or precedent is submitted. We have never had occasion to pass upon the specific question thus raised, but in In re Hartt's Estate, 75 Wyo. 305, 295 P.2d 985, we held that under the circumstances of that case a failure to file an inventory for about eight months was not cause for removal of the executors; while in In re Haddenham's Estate, Wyo., 358 P.2d 706, we noted the use in the statute of the word "must" and held the removal of the executor for failure to comply with the statute was within the discretion of the trial court. If the legislature had intended.

the failure of compliance with § 2–153 to render void all proceedings taken by the administrator, as appellants urge, there would have been no occasion for the passage of § 2–159, W.S.1957, providing for the removal of an administrator for failure to return the inventory within the time prescribed. Since appellants' inference is not supported nor justified, there is no occasion to consider appellee's response that § 2–153 does not apply to a successor-administrator.

It is unnecessary to discuss appellants' assertion of noncompliance with §§ 2–249 and 2–250 because they assume, without undertaking to substantiate by authorities or cogent argument, compliance with these statutes to have been requisite during the period of Bryan Patrick rather than that of his predecessor.

■ We advert then to the argument that there was a failure of Bryan Patrick to follow the requirement of § 2–253 in seeking an order to sell so much of the personal property as was necessary and the correlative assertion that his sale of 2,405 shares of the estate's stock in the corporation was unwarranted. As to the first portion of the argument, we agree with appellee that the original administrator's petition was sufficient. However, the latter portion of the argument is unchallenged, Bryan Patrick admitting on cross-examination that the amount to be received from the sale of the stock would be more than sufficient to pay the obligations of the estate, including costs of administration. His excuse was revealing, "We thought to be save [safe] we should have a little in excess and any residue money would be distributed equally * * *. We could see no difference." The mentioned statute gives no authority to sell more of the personal property than is necessary to pay the debts, and the petition upon which the court's order of sale was based did not request more than was required to pay the estate's obligations. The sale of any stock over this amount cannot be approved. In re Potter's Estate, Wyo., 396 P.2d 438.

Passing then to the argument that the administrator, Bryan Patrick, failed to comply with corporate procedures, we note appellants' statement that Article XI of the articles of incorporation provides that none of the shares of stock shall be sold without the consent of the board of directors unless the holder gives certain notice and that Article XIII of the by-laws provides:

"Any member of this corporation who shall be desirous of selling any of his shares, the executor or administrator of any member, deceased, and the grantee or assignee of any shares sold on execution, shall cause such, their shares, respectively, to be appraised by the directors, which it shall be their duty to do on request, and shall thereupon offer the same to them for the use of the corporation at such appraised value; and, if said directors shall choose to take such shares for the use of the corporation, such * * * administrator * * * shall, upon the payment * * * of such appraised value * * * transfer and assign such * * * shares to said corporation * * *.

"It shall be the duty of such * * * administrator * * * to offer said shares for appraisal of its then book value * * *."

Since the evidence discloses the consent of the board of directors to the sale, there would not appear to be any violation of Article XI. As to the alleged failure to comply with Article XIII, appellee asserts that there was substantial compliance with this provision as shown by the minutes of the corporation meeting on February 10, 1952, which in the aspect material to this point stated:

"Upon motion duly made, seconded and carried, the President and Secretary are hereby authorized and directed to purchase, at book value based on the financial statement of December 31, 1951, a sufficient number of shares of the capital stock held in the name of Lottie H. Patrick, to fulfill the require-

ments of the Resolution adopted May 26th, 1951, and upon proper official notification by the Administrator of the Estate of said Lottie H. Patrick, to transfer any remainder of stock according to his instructions."

The designated minutes of the May 26 meeting recited a discussion of the accounts receivable from the deceased to the corporation, noted the fact that since the assets were composed entirely of her stock it would be necessary for sufficient thereof to be sold for the purpose of raising money to pay the sums advanced by the corporation and the debts and expenses of the estate. These minutes also disclosed the passage of the following resolution:

"Resolved, that Patrick Brothers, Inc., a corporation, purchase _____ number of shares of capital stock from the Estate of Lottie H. Patrick, deceased, for the purpose of providing money with which to pay Estate expenses, and debts of the deceased. Be it further resolved, that each stockholder present, by signing this Resolution, does hereby consent and approve the purchase of said stock by the corporation."

The minutes show the resolution to have been signed by eight of the deceased's children, including Arthur; however, on the stand, he asserted that he was not present at the meeting, that there was no meeting on that date, it being the day of his mother's funeral, and that at no time had he attended a meeting where a resolution had been adopted authorizing the purchase of a blank number of shares. Neither party cites analogous cases or authorities, the challengers merely pointing out that the corporate procedures were not followed and the one challenged responding that the mentioned occurrences constituted substantial compliance with the provisions in the articles and by-laws. Appellee draws attention to the fact that all of the Patrick children who were stockholders of the corporation had entered into an agreement on November 15, 1944, in which they (1) recited that the Mother, Lottie, was suffering from senile

dementia, requiring constant care and attention, resulting in expense, which might exceed the resources of her property, and that it devolved upon the heirs, and it was their desire, to provide for her care; (2) stated the number of shares of stock each of the family members signing the agreement had in the corporation; and (3) provided that the corporation should defray all expenses for the last sickness of Lottie, including expenses of the funeral, and keep an account of the same—the heirs jointly and severally guaranteeing full payment to the corporation of all sums advanced, and in order to secure repayment to the corporation of the sums, endorsed their stock, and agreed that after the amount of advancement made by the corporation had finally been determined, less any repayments made by the estate, any residue of the stock of Lottie H. Patrick remaining in the estate should be divided among her heirs according to law.

Although there was not a literal compliance with the portion of Article XIII which provided that the administrator should cause the shares to be appraised by the directors, there is considerable basis here for the contention that the compliance was substantial, and no showing that a failure of exact compliance was fatal.

▋ Considerable argument of the parties is directed to the value of the stock, the appellants contending that on the basis of the assets of the corporation the stock is worth far more than the amount paid, and in fact about thirteen dollars per share, pointing out that they made an offer of proof to substantiate this amount and that the term "book value" could not properly and equitably be construed as being any figure which the corporation might choose to employ even though such may have been used for tax or other purposes. They charge further that the large difference in the value of the stock and the price paid by the corporation would especially benefit Bryan Patrick, the largest stockholder in the corporation, and additionally that he was by his interest disqualified from pur-

chase. Appellee answers this argument by saying that there is no showing of the book value being incorrectly computed from the financial statement of December 31, 1951, and that there is no evidence or offer of proof to indicate the market value as of that date; that the estate stock was contracted to be sold in 1952; that the entire transaction was the result of a mutual agreement between the heirs concerning the repayment of the expenses advanced by the corporation and not within the provisions of § 2-296, W.S.1957;[1] that this was a closely held corporation in which there was no market value of the stock; and that the order confirming the sale was based upon a proper petition for authority to sell, order of sale, inventory and appraisement (all of which occurred in 1952), and the 1964 report of sale, and since the record discloses no irregularities or improprieties, the order should be approved. He calls attention to the fact that there is nothing in the record to charge or prove fraud or collusion of any nature; that this is not contended either in oral argument or brief; and that in the absence of such charge and proof the mere fact of the administrator's being the president and largest stockholder of the corporation which was the purchaser of the estate stock is not sufficient grounds to set aside the sale, citing Olmstead v. McCleary, 128 Wash. 406, 223 P. 15; 3 Bancroft, Probate Practice, §§ 551 and 552 (2 ed.). The reference in the by-laws and in the minutes to the sale of stock at the "book value" is ambiguous, despite the reference in Article XIII to the appraisal of the stock by the directors. Actually, as is disclosed by the authorities cited by both parties, there is no clear and unequivocal meaning of the words "book value." It is said in 13 Am.Jur. Corporations § 176, "The book value of corporate stock * * * is its net worth as shown by the books of the concern." An extensive annotation on the subject, 51 A.L.R.2d 606, 608, says:

"The term 'book value' has no generally accepted meaning; its significance varies according to the particular definitions or stipulations under which it is to be determined. * * *

"Because 'book value' is not a term of art representing a constant concept, and because its significance often appears not to be adequately appreciated by parties using it, its use in contracts and other documents has often resulted in ambiguities which culminated in misunderstandings and litigation. * * *"

It would serve no useful purpose to pursue definition of these words since it was appellants' burden to show an improper valuation of the stock if that were the fact, and this was not done under any concept of the evidence. There was no showing that the valuation of a share of Patrick Brothers, Inc., stock at the time of the death of deceased or at the time of the order of sale of deceased's stock in 1952 was more than the $2.75. Instead there was an insinuation which was not sufficient to warrant the trial court's granting of relief. Moreover, even were the 1963 date to be considered as controlling, there would be no evidence of a disparity between the actual value of the stock and the selling price. Appellants offered to prove the value of certain lands and holdings of the corporation. Upon appellee's objection on the basis of lack of relevancy, the court rejected the offer, and we think properly, since the proof of certain assets could not under any concept of the situation prove book value without other comprehensive evidence concerning the financial status of the corporation. An offer to prove facts which must be followed by other proof to connect it is inadmissible unless there is also an offer to prove the connection. Lewis Hubbard & Co. v. Montgomery Supply Co., 59 W.Va. 75, 52 S.E. 1017, 4 L.R.A.,N.S., 132; 53 Am.Jur. Trial § 102.

The appellants in the trial court had the substantial burden of showing that the chal-

---

1. "No executor or administrator must, directly or indirectly, purchase any prop- erty of the estate he represents, nor must he be interested in any sale."

lenged sale was illegal. The record disclosed without question that Arthur G. Patrick had been a stockholder, participated in the activities of Patrick Brothers, Inc., signed the original agreement with his sister and other brothers concerning the corporation's assuming of the last expenses of deceased, and attended the February 10 corporate meeting where the proposed transfer of the stock from the estate to the corporation in payment of the obligation on behalf of deceased had been an item of business. As administrator, he had presented to the court a petition asking to sell the stock, impliedly representing therein that he was satisfied with the value of it as appraised. For more than ten years thereafter he did nothing relating to the consummation of the order which the court had entered at his instance. His explanation of his inactivity was, "I could never get any type of valuation that was fair." He did not contend that he had asked the court for assistance. Appellants did little at the hearing to discharge their burden since, as has been noted, the mere failure of the successor-administrator to comply with certain provisions of the statutes would not ipso facto vitiate the sale. Nothing was presented in the hearing which concretely showed that the stock of the corporation was worth more than the appraised price. Although there was much contention as to values and the impropriety of the successor-administrator's indirect benefit, there was no charge of fraud or collusion and no actual proof of benefit. We find nothing in the record which would show either an incorrect ruling or an abuse of discretion on the part of the trial court.

The judgment should be modified to allow the sale of only so much of the stock as was necessary to pay the debts of deceased, the costs of last sickness, funeral expenses, and administration. Subject to such modification, the judgment is affirmed.

Affirmed as modified.